**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

MARY B. LEGGETT,

                Plaintiff,

                                        Case No. 04-C-422

    -vs-

MILWAUKEE COUNTY,

                Defendant.

**DECISION AND ORDER**

The *pro se* plaintiff Mary B. Leggett ("Leggett") has brought suit against Milwaukee County, alleging that its overtime policies constitute gender discrimination under Title VII. Leggett worked as a Juvenile Correctional Officer ("JCO") at the Milwaukee County Juvenile Detention Center ("JDC"). She alleges that starting in February 1997, Milwaukee County began a new policy which denied women the opportunity to garner overtime during third shift. Although Leggett apparently no longer works for Milwaukee County (she averred that she was unemployed in her petition to proceed *in forma pauperis*), Leggett brings no claims relating to the circumstances of her separation.

Milwaukee County has moved for summary judgment. In its motion, Milwaukee County complied with Civil L.R. 56.1 (E.D. Wis.) (Summary Judgment Motions in Pro Se Litigation) by providing a "short and plain statement that any factual assertion in the movant's affidavit(s) or other admissible documentary evidence will be accepted by the

Court as being true unless the party unrepresented by counsel submits the party's own affidavit(s) or other admissible documentary evidence contradicting the factual assertion." Civil L.R. 56.1(a)(1). Milwaukee County also re-produced the text of Fed. R. Civ. P. 56(e) and (f), Civil L.R. 56.1, Civil L.R. 56.2, and Civil L.R. 7.1, *see* Civil L.R. 56.1(a)(2), and the motion was properly served on Leggett at her last known address. However, Leggett has failed to respond to Milwaukee County's motion. Therefore, Milwaukee County's factual allegations are accepted as true and adopted as the Court's findings of fact for purposes of this motion. (Docket No. 22).

For the reasons that follow, Milwaukee County's motion is granted.

## BACKGROUND

The JDC is operated by Milwaukee County for the care, safety, security, and rehabilitation of juvenile detainees entrusted to its care. (Defendant's Proposed Findings of Fact, ¶ 5). The living areas are organized into pods which contain individual cells, and the pods are segregated by gender. (DPFF, ¶ 6, 8). Because males outnumber females approximately 6 to 1, there are proportionately more male pods than female pods. (DPFF, ¶ 26).[1] The juveniles spend the majority of their daytime hours in a common room, classroom, or recreation room. It is only during third shift (11:00 p.m. to 7:00 a.m.) that juveniles are confined to their individual cells. (DPFF, ¶ 14).

B. Thomas Wanta ("Wanta"), Superintendent of the JDC, has instituted a direct supervision model, along with a same-gender role modeling and mentoring philosophy.

---

[1] From 1997 to 2001, the average juvenile population at the Milwaukee County JDC was 3,851. Of that number, 3,264 were male and 587 were female. (DPFF, ¶ 26).

-2-

To maintain a consistent program, Wanta has concluded that same-gender role modeling should be used on all three shifts, including overtime assignments, at the JDC. (DPFF, ¶ 80). This, combined with Wisconsin DOC Regulations which require constant supervision of juveniles in custody,[2] means that at least one same-gender JCO must be on duty during all three shifts. However, while first and second shifts are staffed with two staff members per pod, each pod is assigned only one JCO for third shift, during which time the juveniles are confined to their cells and there is less need for supervision. (DPFF, ¶¶ 120-21). Therefore, because there are fewer female pods than male pods, female JCOs are given fewer opportunities for third-shift/overtime assignments. Use of extra JCOs on third shift for male pods would cost approximately $750,000 per year. (DPFF, ¶ 112).

## ANALYSIS

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

---

[2] Staff members are required by DOC regulations to observe each juvenile at intervals of 15-60 minutes. (DPFF, ¶ 37).

Milwaukee County argues that its policy of excluding female correctional officers from third-shift overtime at the JDC is permissible because male gender is a *bona fide* occupational qualification ("BFOQ") for JCOs in male pods during third shift. Title VII permits classifications based on gender where sex is a BFOQ "reasonably necessary to the normal operation of that particular business enterprise." *Torres v. Wisconsin Dept. of Health & Social Servs.*, 859 F.2d 1523, 1527 (7th Cir. 1988).

The essence of the JDC's business is the care, rehabilitation, safety and security of the juveniles entrusted to its care. Milwaukee County offers an array of justifications for excluding female JCOs from third-shift duties. First, the implementation of same-gender role modeling and mentoring, along with the use of direct supervision. Studies have demonstrated that same-gender role modeling provides greater rehabilitative success. (DPFF, ¶¶ 55, 77). Second, the need to take stringent precautions to prevent child sexual assaults and staff sexual misconduct. In the juvenile setting, it is extremely important to prevent sexual misconduct, where it occurs ten times more frequently than in adult institutions. (DPFF, ¶ 103). Sexual misconduct in the institutional setting has a severe effect on juveniles and damages the credibility and morale of the institution in general. (DPFF, ¶¶ 106-107). Moreover, heterosexual assaults and misconduct are more likely than homosexual assaults and misconduct. (DPFF, ¶ 110). Therefore, it is inefficient from a risk management standpoint to assign a staff member to an opposite-gender pod on third shift. (DPFF, ¶ 111). Third, the importance of protecting juveniles' privacy interests. In particular, nighttime observation of juveniles in various states of undress and in the throes of puberty by opposite-gender staff members is damaging and impedes the rehabilitation process. (DPFF, ¶ 101). *See, e.g., In the Matter of Juvenile Detention*

*Officer, Union County*, 837 A.2d 1101, 1109 (N.J. App. 2003) (privacy interests in not being viewed by opposite-gender juvenile detention officers would be undermined by failing to make gender-specific assignments; the resulting humiliation and embarrassment would hinder rehabilitation)

Given the "perplexing sociological problems of how best to achieve the goals of the penal function in the criminal justice system," *Torres*, 859 F.2d at 1529, the "reasoned decisions of prison officials are entitled to deference." *Everson v. Michigan Dep't of Corr.*, 391 F.3d 737, 750 (6th Cir. 2004). Numerous courts have accordingly held that the goals of "security, safety, privacy, and rehabilitation can justify gender-based assignments in" correctional facilities. *See, e.g., Everson*, 391 F.3d at 753 ("the exclusion of males from these positions is 'reasonably necessary' to the 'normal operations' of the [Department of Corrections'] female facilities"); *Ribono v. Iranon*, 145 F.3d 1109, 1110-11 (9th Cir. 1998); *Tharp v. Iowa Dep't of Corr.*, 68 F.3d 223, 226 (8th Cir. 1995); *Torres*, 859 F.2d at 1532. Milwaukee County has demonstrated that the exclusion of female correctional officers from third shift is reasonably necessary to the operation of the JDC. Therefore, male gender is a BFOQ for JCOs working third shift in male pods at the JCD.

Milwaukee County also argues that Leggett cannot state a claim because the change in overtime policies was not a "materially adverse" employment action. Title VII forbids only discriminatory acts "with respect to [the employee's] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Such actions generally include hiring, firing, failing to promote, reassignment with materially different responsibilities, or some other action causing a "significant" change in benefits. *See*

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Minor inconveniences or alterations of job responsibilities are not actionable. *See, e.g., O'Neal v. City of Chicago*, 392 F.3d 909, 912-13 (7th Cir. 2004).

As a result of the shift assignment practices that prevented women from obtaining third-shift overtime, Leggett's pay was not decreased, and her job duties were not changed in a way that significantly reduced her career prospects or altered her work environment in a material way. (DPFF, ¶¶ 84-89, 132-34). Furthermore, there was other overtime available to Leggett, but she did not accept it. (*Id.*) Under these circumstances, there is no materially adverse employment action to sustain a claim under Title VII. Leggett's subjective preference for overtime on a particular shift is not enough to state an adverse employment action. *See O'Neal*, 392 F.3d at 913. Courts have applied the same reasoning to shift assignments in a correctional setting. *See, e.g., Tharp*, 68 F.3d at 226 (exclusion of male officers from female-only shifts was not a materially adverse employment action).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Milwaukee County's motion for summary judgment [Docket No. 20] is **GRANTED**; and

2. This matter is **DISMISSED** in its entirety.

Dated at Milwaukee, Wisconsin, this 8th day of November, 2006.

                    **SO ORDERED,**

                    **s/ Rudolph T. Randa**
                    **HON. RUDOLPH T. RANDA**
                    **Chief Judge**